[No. 3367.]

### SAENGER v. HARRIS.

1. APPEAL—*Verdict Supported by Competent Evidence*, not inherently improbable, or opposed by any physical impossibility presented by the testimony in the case, will not be disturbed.

2. DAMAGES—*Duty of Plaintiff to Minimize.* Trespasser constructs a dam in an irrigating ditch upon the land of another, against the protests and objections of the land owner. When a portion of it is removed he replaces it. Held, that the land owner was not under duty to remove the obstruction, even though it was upon his own land, and his failure to do so was no bar to his action for injuries to his land and the crops thereon, attributable to an overflow caused by the dam.

*Appeal from Weld District Court.* HON. JAMES E. GARRIGUES, Judge.

Mr. THOMAS M. MORROW, for appellant.

Mr. H. E. CHURCHILL, for appellee.

KING, J., delivered the opinion of the court.

In 1907, Harris, the appellee, was, and for a long time prior thereto had been, the owner of certain lands in Weld county in this state, upon which he was growing alfalfa and potatoes. Situated upon this land was a ditch running from the west to the east until it reached the southeast corner of section

3, at which point it turned abruptly to the north, terminating in the Empire ditch. The ditch had been built many years before and was owned and used by The Lower Latham Ditch Company to carry waste and surplus waters from the main ditch to the river, until the Empire ditch was built, after which it wasted into that ditch. This waste ditch was of varying depths, from two or three feet at the upper end to six feet or more at the lower end, including the cut in the ground and the bank above the surface, and in the upper reach it constituted a dike considerably above the level of plaintiff's lands. In 1905 Saenger, the appellant, placed a dam in this waste ditch at the point where it turned to the north, but that dam washed out. In 1907 the dam was replaced and maintained, being about 12 or 14 feet wide and about 5 feet in height, raising the water in the waste ditch above the surface of the ground, but not as high as the ditch banks at that point. Plaintiff protested against the replacing of this dam, claiming it would cause an overflow upon his land. About the 12th of August the water overflowed the ditch banks, and continued to overflow thereafter, being greatest at a point from 80 to 110 rods west from the dam, and the water so overflowing is admitted to have destroyed a portion of plaintiff's alfalfa and potato crop, and is shown to have permanently destroyed the stand of alfalfa. Plaintiff brought suit for damages in the sum of $850. The cause was tried to a jury which found a verdict in favor of plaintiff for $500, upon which judgment was entered. Plaintiff testified that prior to the placing of the dam, the ditch was clean to the hard ground; that when the overflow began,

he cut out a portion of the dam which allowed the
water to run down and showed a deposit of sand
three feet in depth at the dam; that the sand was
deposited in varying depths from that point up the
ditch for a half mile.     Another witness testified
that he had known the ditch for a number of years
and that it had never required cleaning for the
reason that it had always kept itself clean; that it
had fall enough to carry out the sand and had al-
ways done so.    The evidence showed that from the
12th day of August the ditch was so full of sand
as to reduce its capacity to the extent that the water
overflowed in large quantities, at or near the upper
end of plaintiff's cultivated fields.    Defendant made
no effort to dispute the destruction of the crops by
reason of the overflow, but denied his responsibility
therefor, and introduced the testimony of an ex-
perienced and qualified civil engineer by which it
appeared that the grade of the ditch at the lower end
was such that a dam constructed of the height shown
in the evidence would not raise the level of the wa-
ter in the ditch so as to back the water itself up
the ditch farther than 950 feet, at which point the
level of the water in the bottom of the ditch would
be the same as the top of the dam.    From this tes-
timony counsel for appellant strenuously insists and
ably argues that it is conclusively shown that the
backing of the water to the point of overflow was
a physical impossibility.    The engineer gave as his
opinion that the effect of the dam could not possibly
be to back the water above that point.    He testified
that the velocity of the water would be reduced to
a point about 1500 feet west of the dam, but that,
in his opinion, such dam would not cause the deposit

of sand in the ditch at the point where the overflow
chiefly occurred.   The case was submitted to the
jury upon the theory and with instructions that
plaintiff was entitled to recover in case the overflow
was the result, either of the direct backing of the
water, or the filling of the ditch with sand, provided
the dam placed by appellant caused such backing of
the water or filling of the ditch.   It was in evidence
that the water flowing into and through this ditch
was heavily charged with sand.

The case was tried upon the theory that the
quantity of material a given stream can carry in
suspension depends in part on the depth of the wa-
ter and the velocity of the stream, being greater as
the depth of the water and velocity of the stream is
greater; that a stream as for instance, a ditch, will
not scour its bed, or as the ranchmen witnesses
herein characteristically say, "clean itself", unless
the velocity is sufficient to carry the silt in suspen-
sion—in other words, transport it; that if in one
part of the ditch the velocity is great enough to
carry the sand so held in suspension and in a sub-
sequent part of the course the velocity is diminished,
part of the material must be deposited; that this
deposit will form a bank or obstruction in the ditch
which may extend backward from the check indefi-
nitely, following the shape of the channel, until the
conduit is filled, or reduced in capacity from one end
to the other, notwithstanding the grade.   The opin-
ion expressed by the witnesses for the plaintiff and
the view adopted by the jury are not wholly un-
tenable or opposed by any obvious physical impos-
sibility under the testimony in the case.   There was
evidence from which the jury could and doubtless

did find that the dam complained of was the pre-
dominant cause of the deposit of sand in the ditch,
and therefore, the proximate cause of the injury
complained of.

Appellant contends that nothwithstanding his
acts in placing the dam in the ditch, plaintiff can-
not recover because, being upon his land he had the
right to remove the dam, and should have saved
himself from damage by removing it and keeping
the ditch clean. In view of the evidence that plain-
tiff protested against and at one time did cut out
a portion of the dam, which appellant replaced, ap-
pellant cannot now be heard to say that appellee
should have taken further steps to save himself
from continued injury. Interference with irrigation
works too often results in loss of life to justify a
resort to that means, and resort to the civil courts,
instead of the forcible removal of dams placed for
irrigation purposes, is to be commended.

Exceptions were reserved to certain instruc-
tions of the court, which, by agreement of counsel
in open court, were delivered orally instead of be-
ing submitted in writing; but as a whole, the in-
structions fairly state the law as applicable to this
case. We do not think the judgment should be re-
versed because the amount of damages awarded
by the jury was less than demanded by the com-
plaint and might have been awarded under the evi-
dence. The judgment is affirmed.